UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

METROPOLITAN PROPERTY AND
CASUALTY INSURANCE COMPANY,

                    Plaintiff,

v.

PATRICK J. McCARTHY and LISA L.
McCARTHY, individually and as personal
representatives of the ESTATE OF
DANIELLE McCARTHY, a deceased
minor child; JORDAN PARIS,
individually; and GARY M. JONES,
individually;

                    Defendants.

CASE NO. C14-5143 BHS

ORDER GRANTING
PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT

This matter comes before the Court on Plaintiff Metropolitan Property & Casualty

Insurance Company's ("MetLife") motion for summary judgment (Dkt. 20).  The Court

has considered the pleadings filed in support of and in opposition to the motion and the

remainder of the file and hereby grants the motion for the reasons stated herein.

## I. PROCEDURAL HISTORY

On December 9, 2009, Patrick and Lisa McCarthy (the "McCarthys") sued Jordan

Paris ("Paris") and other defendants in Pierce County Superior Court.  Dkt. 21,

Declaration of Jason E. Vacha ("Vacha Dec."), Ex. A.  The McCarthys claim that Paris negligently failed to summon assistance for their sixteen-year-old daughter, Danielle McCarthy ("Danielle"), who passed away after overdosing on ecstasy.  *Id.* at 6.

On October 19, 2012, MetLife denied insurance coverage to Paris.  Vacha Dec., Ex. E at 2.  On January 17, 2014, MetLife began defending Paris under a reservation of rights.  *Id.*  On February 19, 2014, MetLife filed a complaint for declaratory judgment in this court.  Dkt. 1.  On May 20, 2014, an order of default was entered against Paris and Gary Jones.  Dkt. 17.

On June 18, 2014, MetLife filed a motion for summary judgment.  Dkt. 20.  On July 14, 2014, the McCarthys—the remaining defendants—responded to MetLife's motion.  Dkt. 22.  On July 17, 2014, MetLife replied.  Dkt. 24.

## II. FACTUAL BACKGROUND

Paris and Danielle were at a New Year's Eve party on December 31, 2006.  Vacha Dec., Ex. A at 6.  While at the party, Danielle consumed two pills of ecstasy.  *Id.* at 9.  Each pill contained four doses of MDMA, an illegal psychoactive substance.  *Id.*  After consuming the pills, Danielle became progressively ill and drifted in and out of consciousness.  *Id.* at 10.  Danielle passed away the next morning.  *Id.* at 12.

Following her death, the McCarthys sued Paris and other defendants for negligently failing to summon assistance for their daughter.  *Id.* at 6.

At the time of Danielle's death, Paris's parents, Charles Sundsmo and Candace Paris-Sundsmo (the "Sundsmos"), had a homeowners insurance policy with MetLife.

Vacha Dec., Ex. B.  The policy had a term of April 15, 2006 to April 15, 2007, and liability limits of $500,000 for each occurrence.  *Id.* at 4.

The MetLife policy provides liability coverage for "all sums for bodily injury." *Id.* at 29.  The policy, however, contains an exclusion for bodily injury arising out of the use of a controlled substance:

> 14. Controlled Substance. We do not cover bodily injury or property damage arising out of the use, sale, manufacture, delivery, transfer or possession by any person of a Controlled Substance, as defined by the Federal Food and Drug Law, Act 21 U.S.C.A. Sections 811 and 812, including any amendments.

*Id.* at 32.  A controlled substance "includes, but is not limited to, cocaine, LSD, marijuana, and all narcotic or hallucinogenic drugs."  *Id.*

The MetLife policy also provides that MetLife will defend all insureds in suits seeking damages.  *Id.* at 29.  Under the policy, an insured is either a person named in the policy's declarations page or a resident of the named insured's household:

> ["Insured" means]: 1. the person or persons named in the Declarations and if a resident of the same household:
> A. the spouse of such person or persons;
> B. the relatives of either; or
> C. any other person under the age of twenty-one in the care of any of the above.

*Id.* at 9.  Charles Sundsmo and Candace Paris-Sundsmo are the only individuals named in the declarations page.  *Id.* at 4.

After reviewing the McCarthys' claims against Paris, MetLife determined that Paris was not an insured under the Sundsmos' policy.  Vacha Dec., Ex. E at 2.  At the time of Danielle's death, Paris was eighteen years old and had moved out of his parents'

home.  Vacha Dec., Ex. C at 15; Ex. D at 7–9.  MetLife denied coverage to Paris under

the Sundsmos' policy.  Vacha Dec., Ex. E at 2.  MetLife later learned that Paris gave his

parents' address to the police in the aftermath of Danielle's death.  MetLife therefore

began defending Paris under a reservation of rights.  *Id.*

### III. DISCUSSION

MetLife moves for summary judgment, arguing that that the Sundsmos' policy

does not provide coverage for the claims against Paris.  MetLife also argues that the

McCarthys' counterclaims that MetLife acted in bad faith by denying coverage for Paris

should be dismissed.  In response, the McCarthys argue that MetLife breached its duty of

good faith to Paris and thus should be estopped from denying coverage.

**A.     Summary Judgment Standard**

Summary judgment is proper only if the pleadings, the discovery and disclosure

materials on file, and any affidavits show that there is no genuine issue as to any material

fact and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).

The moving party is entitled to judgment as a matter of law when the nonmoving party

fails to make a sufficient showing on an essential element of a claim in the case on which

the nonmoving party has the burden of proof.  *Celotex Corp. v. Catrett*, 477 U.S. 317,

323 (1986).  There is no genuine issue of fact for trial where the record, taken as a whole,

could not lead a rational trier of fact to find for the nonmoving party.  *Matsushita Elec.*

*Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must

present specific, significant probative evidence, not simply "some metaphysical doubt").

*See also* Fed. R. Civ. P. 56(e).  Conversely, a genuine dispute over a material fact exists

1    if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or

2    jury to resolve the differing versions of the truth.  *Anderson v. Liberty Lobby, Inc.*, 477

3    U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d

4    626, 630 (9th Cir. 1987).

5          The determination of the existence of a material fact is often a close question. The

6    Court must consider the substantive evidentiary burden that the nonmoving party must

7    meet at trial—e.g., a preponderance of the evidence in most civil cases.  *Anderson*, 477

8    U.S. at 254; *T.W. Elec. Serv., Inc.*, 809 F.2d at 630.  The Court must resolve any factual

9    issues of controversy in favor of the nonmoving party only when the facts specifically

10   attested by that party contradict facts specifically attested by the moving party.  The

11   nonmoving party may not merely state that it will discredit the moving party's evidence

12   at trial, in the hopes that evidence can be developed at trial to support the claim.  *T.W.*

13   *Elec. Serv., Inc.*, 809 F.2d at 630 (relying on *Anderson*, 477 U.S. at 255).  Conclusory,

14   nonspecific statements in affidavits are not sufficient, and missing facts will not be

15   presumed.  *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888–89 (1990).

16   **B.      Insurance Policy Interpretation Under Washington Law**

17         In Washington, the interpretation of insurance policies is a question of law.  *Am.*

18   *Star Ins. Co. v. Grice*, 121 Wn.2d 869, 874 (1993), *opinion supplemented by* 123 Wn.2d

19   131 (1994).  Washington courts construe insurance policies as a whole, giving force and

20   effect to each clause in the policy.  *Id.*  If the policy language is clear and unambiguous,

21   the Court will not modify the policy or create an ambiguity.  *Id.*  If the policy language is

22   fairly susceptible to two different reasonable interpretations, it is ambiguous, and the

1   Court may attempt to discern the parties' intent by examining extrinsic evidence.  *Id.*  If

2   the policy remains ambiguous after resort to extrinsic evidence, the Court construes the

3   ambiguities against the insurer.  *Id.* at 874–75.

4   **C.      MetLife's Motion for Summary Judgment**

5          **1.      MetLife's Duty to Defend or Indemnify Paris**

6          MetLife argues that the Sundsmos' policy does not provide coverage for the

7   claims against Paris because Paris is not an insured under the policy.  Dkt. 20 at 8.

8          Under the MetLife policy, an insured is either a person named in the policy's

9   declarations page or a resident of the named insured's household.  Vacha Dec., Ex. B at

10  9.  Charles Sundsmo and Candace Paris-Sundsmo are the only individuals named in the

11  declarations page.  *Id.* at 4.  Thus, Paris is an insured only if he was a resident of the

12  Sundsmos' household at the time of Danielle's death.

13         The MetLife Policy does not define the term "resident."  Washington courts,

14  however, consider four factors to determine who is a "resident of the same household":

15         (1) the intent of the departing person, (2) the formality or informality of the
           relationship between the person and the members of the household, (3) the
16         relative propinquity of the dwelling units, and (4) the existence of another
           place of lodging.

17   *Pierce v. Aetna Cas. & Sur. Co.*, 29 Wn. App. 32, 38 (1981).

18         The undisputed evidence indicates that Paris was not a resident of the Sundsmos'

19  household when Danielle passed away.  Paris moved out of the Sundsmos' home in either

20  January or February 2006.  Vacha Dec., Ex. C at 15; Ex. D at 7.  At the time, Paris was

21

22

1   eighteen years old and finishing his senior year of high school.  Vacha Dec., Ex. C at 15.

2   Paris took the majority of his clothing and possessions when he moved out.  *Id.* at 16–17.

3        After moving out, Paris never visited his parents at their home.  Dkt. 25,

4   Supplemental Declaration of Jason E. Vacha ("Supp. Vacha Dec."), Ex. A at 18.  Paris's

5   mother only saw Paris after he moved out at his high school graduation and at a family

6   vacation in Illinois.  Supp. Vacha Dec., Ex. B at 11, 14.  Neither of these two visits

7   occurred at the Sundsmos' home.  *Id.*  While the Sundsmos paid some of Paris's bills,

8   they did not contribute to his rent after he moved out.  Supp. Vacha Dec., Ex. A at 22.

9        The McCarthys argue that Paris was a resident of the Sundsmos' household.  They

10  argue that Paris believed he still had a room at the Sundsmos' home, Paris did not change

11  his address with the school district, and Paris gave the Sundsmos' address to the police in

12  the aftermath of Danielle's death.  Dkt. 22 at 6–7.  Paris, however, never stayed overnight

13  at his parents' home after he moved out.  Supp. Vacha Dec., Ex. B at 11.  In fact, Paris

14  testified that he "didn't want to be back . . . living with [his] parents."  Supp. Vacha Dec.,

15  Ex. A at 18.  Paris further testified that he gave his parents' address to the police because

16  he could not recall his own address at the time.  *Id.* at 51.  Even in the light most

17  favorable to the McCarthys, the evidence establishes that Paris was not a resident of the

18  Sundsmos' household at the time of Danielle's death.  As a matter of law, Paris is not an

19  insured under the MetLife policy.

20       Even if Paris was an insured, however, MetLife would still not be obligated to

21  provide coverage for the McCarthys' claims against him.  The policy contains an

22  exclusion for bodily injury arising out of the use of a controlled substance.  Vacha Dec.,

1   Ex. B at 32.  A controlled substance "includes, but is not limited to, cocaine, LSD,

2   marijuana, and all narcotic or hallucinogenic drugs."  *Id.*

3       The McCarthys argue that their claims arise from Paris's negligent failure to

4   summon assistance for Danielle rather than the use of controlled substances.  Dkt. 22 at 7.

5   The McCarthys' underlying complaint, however, alleges that Danielle passed away after

6   overdosing on MDMA, an illegal controlled substance.  Vacha Dec., Ex. A at 9.

7   Danielle's bodily injury and death therefore arose out of the use and possession of a

8   controlled substance.  While the McCarthys may characterize their claims as negligence,

9   their claims nevertheless arise out of or originate from the use of a controlled substance.

10  Accordingly, the MetLife policy's controlled substances exclusion bars coverage in this

11  case.

12      Ultimately, Paris is not an insured under the MetLife policy because he was not a

13  resident of the Sundsmos' household.  Even if Paris was an insured the MetLife policy

14  would still not provide coverage because of the policy's controlled substances exclusion.

15  MetLife therefore does not have a duty to defend or indemnify Paris.  The Court therefore

16  grants MetLife's motion on this issue.

17      **2.    The McCarthys' Counterclaims**

18      MetLife also argues that the McCarthys' counterclaims that MetLife acted in bad

19  faith by denying coverage for Paris should be dismissed.  Dkt. 20 at 11.

20      In Washington, "third party claimants may not sue an insurance company directly

21  for alleged breach of duty of good faith under a liability policy."  *Tank v. State Farm Fire*

22  *& Cas. Co.*, 105 Wn.2d 381, 391 (1986).  In other words, "[a]n action for breach of good

1  faith against an insurer is limited to the insured." *Dussault v. Am. Int'l Grp., Inc.*, 123

2  Wn. App. 863, 867 (2004) (citing *Tank*, 105 Wn.2d at 392).

3        The McCarthys do not have standing to assert a bad faith claim against MetLife in

4  this case.  The McCarthys attempt to confuse the issue by arguing on behalf of Paris.  For

5  example, the McCarthys argue:

6  > [T]he burden is upon [MetLife] . . . to rebut the presumption that Mr. Paris
> was prejudiced by the original and wrongful denial of a funded defense.  In
7  > order to overcome this burden, [MetLife] must prove that Mr. Paris would
> be no better off had a timely coverage determination and/or funded defense
8  > have been provided.

9  Dkt. 22 at 14.  The McCarthys, however, are claimants against a non-insured party.  At

10  the very least, the McCarthys have asserted no standing or right to pursue claims on

11  behalf of Paris.  Being so far removed from the insurance contract, the McCarthys do not

12  have standing to bring a claim for bad faith against MetLife.  The Court therefore grants

13  MetLife's motion on the McCarthys' counterclaims.

14  **IV. ORDER**

15        Therefore, it is hereby **ORDERED** that MetLife's motion for summary judgment

16  (Dkt. 20) is **GRANTED**.

17        Dated this 21st day of August, 2014.

18

19  _____

20  BENJAMIN H. SETTLE
   United States District Judge

21

22